IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUNE R. WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 14-3570 |
| | § | |
| HARRIS COUNTY HOUSING | § | |
| AUTHORITY, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Pending before the court is Plaintiff's Amended Motion for Recusal[1] (Doc. 71) pursuant to 28 U.S.C. § 455 ("Section 455"). On March 23, 2016, the court addressed the motion at a status conference, explaining to Plaintiff that she had not stated any grounds for recusal.[2] Plaintiff disagreed and cited bias in the form of "vouching for the other side."[3] Although the court stated that it found no record of bias, it did not enter a ruling. The court does so now.

Section 455 directs a judge to disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Certain specific circumstances require that the judge recuse, including where the judge "has a

---

[1] In the same filing, Plaintiff objected to one of the undersigned's nondispositive orders. The objections will be addressed in a separate order.

[2] See Elec. Rec. of Hr'g Dated Mar. 23, 2016.

[3] Id.

personal bias or prejudice concerning a party." 28 U.S.C. § 455(b). The standard for determining whether a judge should recuse based on Section 455 is "whether a reasonable person, with full knowledge of all the circumstances, would harbor doubts about the judge's impartiality." <u>Matassarin v. Lynch</u>, 174 F.3d 549, 571 (5th Cir. 1999)(quoting <u>Vieux Carre Prop. Owners, Residents, & Assocs., Inc. v. Brown</u>, 948 F.2d 1436, 1448 (5th Cir. 1991)).

Judicial rulings, courtroom administration efforts, and ordinary admonishments to counsel and to witnesses are not valid bases for motions to recuse for personal bias or prejudice. <u>See Liteky v. United States</u>, 510 U.S. 540, 555-56 (1994)("A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune" [from establishing a bias.]); <u>see also</u> <u>Raborn v. Inpatient Mgmt. Partners, Inc.</u>, 352 F. App'x 881, 884 (5th Cir. 2009)(unpublished)(quoting <u>Liteky</u>, 510 U.S. at 555, as stating that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"). The disqualification decision is within the "sound discretion" of the judge. <u>In re Deepwater Horizon</u>, 824 F.3d 571, 579-80 (5th Cir. 2016).

Plaintiff contends (typed here without alteration):

2

> It is clear that the MJ has ruled improperly against Plaintiff, that she holds substantial animosity towards Plaintiff and attempted to manipulate her into holding a contentious exchange in November 2015 off the record.
> Given what the public might reasonably expect the judge to do for the disabled, this judge has a different agenda and legal compliance is not her default viewpoint. Litigants, even those trained in the law, are entitled to an unbiased judge. . . .
> The bias in this case is such that it cannot be cured. The Rehabilitation Act was on the books before this MJ graduated from law school. The attitude she expresses over disability and physical threats to Plaintiff are egregious. She should recuse herself voluntarily on these grounds but also on constitutional grounds. The First Amendment permits parties to speak in opposition to governmental figures and that includes protected class litigants.
> The MJ has been in singed publicly on this issue before Plaintiff ever filed the case against the county. She has not learned her lesson and this time, it is not going to be passed over out of misplaced politeness. Civil cases with disabled litigants who also have protected class status are not to be summarily dismissed, harassed or punished for acting as [C]ongress intended, bring cases in the public interest. The evidence herein reveals of such a high degree of favoritism as to make fair judgment impossible factors clearly present in the instant case. Matters of constitutionality are an overriding factor in the opposition that the MJ has for Plaintiff and the repeated effort to prevent her from being heard.[4]

Plaintiff's motion is awash with hyperbole and unsupported accusations of bias. These are just a few examples of many:

- "That conversation was memorable in that the unstated expectation of the magistrate judge is the docket of cases is more important than human life and definitely Plaintiff's life by inference."[5]

- "In November 2015 the MJ gave Plaintiff a very long

---

[4]  Doc. 71, Pl.'s Am. Mot. for Recusal pp. 20-21 (footnotes omitted).

[5]  Id. p. 3 n.5.

death stare when she was unable to rise after she left the bench again in a huff giving Plaintiff . . . an extended death stare over her left shoulder before opening the door to leave the courtroom[.]"[6]

- "The MJ could not stop talking long enough for Plaintiff to even recite the diagnoses listed in the summary of the records submitted to the court. . . . The MJ was intemperate in cutting Plaintiff off mid-sentence in responding to the court's question about the nature of her disabilities . . . .."[7]

- "[C]ompliance is beyond these defendants and the MJ has failed to take proper notice. . . . The MJ's orders did not allow a sufficient opportunity to pursue discovery and the FRCP 15 joinder matter was not resolved with Plaintiff having appealed the ruling."[8]

- "[T]he response of the MJ is to empower the wrongdoers, strengthening their hand at every turn."[9]

- "The MJ made no adjustments without making threats that were inappropriate and unwarranted. This is a jurist who has given every indication of complete hostility to the laws protecting the disabled. . . . This MJ is not a guardian and has malicious intentions expressed about the facts underlying this litigation."[10]

- "The MJ . . . persists in the campaign of harassment. . . . The MJ has not absorbed the concept of equal treatment under the law."[11]

---

[6] Id. p. 3 n.8.

[7] Id. p. 4.

[8] Id. p. 5.

[9] Id. p. 7 n.14.

[10] Id. p. 7 n.15.

[11] Id. p. 8 n.18.

- "[T]he magistrate judge made remarks that were wholly inappropriate to the matters raised, which she gave short shrift in muting Plaintiff to cut off her responses. Then, she made ridiculing and otherwise harassing remarks to Plaintiff as a disabled litigant being unable to travel before giving Plaintiff the opportunity to even finish the scope and breadth of the disabling diagnoses."[12]

- "The clear agenda at the end of the day was the MJ getting back at Plaintiff for calling her out for bias in the in camera proceeding . . . ."[13]

- "This MJ is trying to exacerbate stress and a cardiovascular diagnosis is the catalyst to give these defendants and the MJ the payoff they are clearly seeking."[14]

- "[M]ost of the statements or actions by the judge in this case are indicative of an overwhelming degree of animosity against her to the point that multiple filings reflect the details, as do the transcripts of hearings in 2015. . . . Further the MJ's pique is on the record in that by refusing to consent to proceeding pro se the MJ in turn that day cancelled the hearing on the motion brought by the county and by doing so denied Plaintiff a First Amendment right to confront the county officials in an effort to shield them from the consequences of their conduct and behavior and to permit them to avoid liability was an abuse of discretion."[15]

- "[T]he fact that the members of the bar were not even criticized for failing to serve Plaintiff is indicative of an abusive pattern and excusing this conduct is ultra vires."[16]

Plaintiff includes many other insulting and/or accusatory

---

[12] Id. p. 9.

[13] Id. p. 12.

[14] Id. p. 12 n.26.

[15] Id. p. 16.

[16] Id. p. 17.

phrases directed at the undersigned, for example: "acrimonious and aggressively dismissive," "attempting to punish Plaintiff," "hostile comment," "taunt from the bench," "more diatribe commentary in another abusive ruling," "ear bashing," "so contentious," "the resentful MJ," "prejudicial manner," "nihilistic predilections," "swatted away the application request," "dismissive attitude," "the MJ is oblivious," "getting back at Plaintiff," "MJ came to their defense," "refusing to open her eyes and read the pleadings," "willingness to condone perjury," "attempt by MJ to blame Plaintiff for the delay of defendant," "covered up her own complicity," and "ego gone wrong."[17]

To the extent that Plaintiff here is utilizing a motion to recuse to move the court to reconsider its rulings, such as the decision to allow Plaintiff's attorney to withdraw, the court declines the opportunity to justify its decisions beyond the reasons clearly stated in the record. The proper avenue for challenging the court's decisions which Plaintiff believes are legally incorrect is to appeal those decisions to the district judge pursuant to Federal Rule of Civil Procedure 72.

Plaintiff provides very few details regarding what action and inaction of the undersigned's was objectionable; however, the motion makes clear that Plaintiff takes issue with the way in which

---

[17] Id. p. 6 & n.12; id. p. 7 & n.14; p. 8 nn.17-18; id. pp. 9, 11; id. p. 12 & n.25; id. pp. 14-16

the undersigned manages the case docket. For example, Plaintiff expresses discontent with the court's delay in ruling on (in Plaintiff's words, "ignoring") her motion for sanctions and her motion for recusal.[18] Also, Plaintiff accuses the undersigned of failing to prevent Defendants from sending the Houston Police Department to the door of Plaintiff's home, but no such motion was ever brought before the court, and the court was not aware of the incident until it had occurred. Moreover, as the court explained at a status conference, whether that action violated Plaintiff's rights is an issue to be considered on the legal merits.[19] The court's decisions regarding the timing of orders and administration of the docket do not form a basis for recusal.

Plaintiff also complains of the undersign's admonishments at hearings, as well as her demeanor, bad temperament, and failure to listen. Plaintiff contends that the undersigned failed to take into consideration Plaintiff's disabilities and discriminated against her on that basis. However, the issue of disability has arisen when the undersigned has required that Plaintiff comply with court orders and rules, and Plaintiff has failed to explain how her

---

[18] Regarding the recusal motion particularly, Plaintiff stated that she was "seeking the recusal of the magistrate judge" on page three of a single-spaced, thirteen-page filing with no title and no initial statement of the relief sought. In her closing paragraph, Plaintiff requested access to PACER and for the referral of this case and a companion case to the district judge. See Doc. 40, Untitled Filing Dated Nov. 3, 2015 p. 12. The motion was not docketed as a motion to recuse the undersigned.

[19] Elec. Rec. of Hr'g Dated Mar. 23, 2016.

disabilities prevented her from doing so.[20]  As a pro se litigant, Plaintiff is still required to "abide by the rules that govern the federal courts."  E.E.O.C. v. Simbaki, Ltd., 767 F.3d 475, 484 (5th Cir. 2014)(quoting Frazier v. Wells Fargo Bank, N.A., 541 F. App'x 419, 421 (5th Cir. 2013)(unpublished)).

Despite the number and vitriolic nature of Plaintiff's complaints, Plaintiff fails to state any facts suggesting that the undersigned displayed "deep-seated favoritism or antagonism that made fair judgment impossible."  Liteky, 510 U.S. at 555.  None of Plaintiff's complaints about the undersigned's courtroom demeanor serves as a basis for recusal.

Plaintiff's motion for recusal is **DENIED**.

**SIGNED** this 31st  day of August, 2016.

_____
U.S. MAGISTRATE JUDGE

---

[20]  For example, the court held a hearing to address Plaintiff's failure to attend her scheduled deposition, and Plaintiff appeared by telephone.  See Doc. 46, Tr. of Hr'g Dated Oct. 26, 2015.  Plaintiff cited tennis elbow, carpal tunnel syndrome, and cubital tunnel syndrome as reasons she needed an extension of discovery.  See id. pp. 10-11.  The court informed Plaintiff that those conditions were not satisfactory reasons for an extension of discovery.  See id. p. 11. Regarding the rescheduling of the deposition, the court asked Plaintiff to suggest a date.  See id. p. 12.  Plaintiff explained her reason for selecting a Tuesday: "[I]f there is some problem physically with me because it's a day-to-day issue, I can then make notification.  I cannot guarantee that there will never be a problem.  That would be ridiculous under the circumstances of my medical reality."  Id. pp. 12-13.  The court responded, "If your elbow hurts you, if your hand hurts you, you still need to be here . . . . Only a hospitalization will prevent you from being here on that date."  Id. p. 13.  Plaintiff then stated, "Let me also point out I have a spinal damage which is why I'm not there [in person] now."  Id.