United States District Court
Southern District of Texas
**ENTERED**
September 02, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUNE R. WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 14-3570 |
| | § | |
| | § | |
| HARRIS COUNTY HOUSING AUTHORITY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant's motion for summary judgment (Doc. 49).  The court has considered the motion, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

**I.  Case Background**

Plaintiff filed this action, alleging violations of the Fair Housing Act, 42 U.S.C. § ("Section") 1983, Section 1985, the Fourteenth Amendment of the United States Constitution, and state law claims of negligence, negligence per se, conspiracy, trespass, and invasion of privacy in her first amended complaint.[2]

**A.  Factual Background**

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 11, Ord. Dated Feb. 27, 2015.

[2]    See Doc. 10, Pl.'s 1st Am. Compl. pp. 12-17.

Plaintiff is a sixty-four-year-old woman who was homeless until 2007, when she began living in subsidized Section 8 housing. Defendant is a county housing authority established under Chapter 392 of the Texas Local Government Code that provides affordable housing to the residents of Harris County. Defendant is considered a local Public Housing Authority ("PHA").[3]

The Department of Housing and Urban Development ("HUD") provides funding to Defendant for the Section 8 Housing Choice Voucher ("HCV") Program, the Section 8 Single Room Occupancy Program, the Section 8 Homeownership Program, and the Moderate Rehabilitation Program.[4] Under the Single Room Occupancy Program, units that consist of sleeping and living spaces are provided to homeless individuals.[5] The restroom and kitchen areas are common areas shared by the residents of the units.[6]

Jackson Hinds Gardens is a property at 607 Thornton Road, Houston, Texas 77018 that provides Single Room Occupancy Units to homeless individuals.[7] Plaintiff applied for housing at Jackson Hinds Gardens in March 2007 by filling out an application and

---

[3]    See 24 C.F.R. § 982.4(b) ("PHA includes . . . [a]ny State, county, municipality, or other governmental entity or public body which is authorized to administer the program").

[4]    See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶ 3.

[5]    See id. ¶ 4.

[6]    See id.

[7]    See id. ¶ 5.

submitting a letter stating that she was homeless.[8]   Plaintiff qualified for the Section 8 HCV Program because she was considered to have "zero" income.[9]   Plaintiff's admission to the HCV Program was not based on a mental or physical disability.[10]   Plaintiff began living at Jackson Hinds Gardens the next month.[11]

Plaintiff, Jackson Hinds Gardens, and Defendant had three different contracts with each other in the course of their relationship.[12]   Defendant had a contract with Jackson Hinds Gardens, called the Housing Assistance Payments Contract under which Defendant submitted housing assistance payments to Jackson Hinds Gardens.[13]   Plaintiff had a contract with Defendant under which Plaintiff agreed to the terms of the HCV Program.[14]   Plaintiff also had a rental agreement with Jackson Hinds Gardens.[15]   In the

---

[8]      See Doc. 49-7, Ex. 7 to Def.'s Mot. for Summ. J., Pl.'s Homeless Letter App.

[9]      See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶ 7.

[10]      See id.

[11]      See id.

[12]      See id. ¶ 9.

[13]      See id.; Doc. 49-11, Ex. 11 to Def.'s Mot. for Summ. J., Orig. Hous. Assistance Payments Contract between Def. & Jackson Hinds Gardens pp. 1-10; Doc. 49-11, Ex. 11 to Def.'s Mot. for Summ. J., New Housing Assistance Payments Contract between Def. and Jackson Hinds Gardens pp. 21-29.

[14]      See Doc 49-13, Ex. 13 to Def.'s Mot. for Summ. J., Aff. of Paul Curry; Doc. 49-10, Ex. 10 to Def.'s Mot. for Summ. J., Pl. & Def. Contract Renewal pp. 1-24.

[15]      See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶ 9; Doc. 49-11, Ex. 11 to Def.'s Mot. for Summ. J., Pl.'s Original Rental Agreement with Jackson Hinds Gardens pp. 11-20; Doc. 49-11, Ex. 11 to Def.'s Mot. for Summ. J., Pl.'s New Rental Agreement with Jackson Hinds Gardens

course of this relationship, Plaintiff was considered a "family" under the HUD regulations, and Jackson Hinds Gardens was considered an "owner."[16]

Under the terms of the contract between Plaintiff and Defendant, Defendant regularly inspected Plaintiff's unit, with it failing inspections for various reasons over the years.[17]  The purpose of such inspections was to make sure that the property was up to the standards required by the contracts between the parties.[18] In addition to failing inspections, Plaintiff cancelled scheduled inspections on April 26, 2014, August 20, 2014, August 28, 2014, and January 29, 2015.[19]

Jackson Hinds Gardens was undergoing bedbug treatments in spring of 2014 because there was an infestation at the complex that began in 2012.[20]  However, Plaintiff did not allow Jackson Hinds Gardens access to the her unit to treat for bedbugs on multiple occasions, except on May 27, 2014, when she did allow for one

---

pp. 31-36.

[16]    See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶¶ 5, 7.

[17]    See id. ¶ 15.  Plaintiff's unit failed inspections on October 20, 2010, October 28, 2010, April 25, 2013, February 14, 2014, May 8, 2014, June 13, 2014, and January 8, 2015.  Id. ¶ 14.

[18]    See id. ¶ 12.

[19]    See id. ¶ 15.

[20]    See id. ¶¶ 16, 18.

4

treatment of her unit.[21]

Plaintiff's unit failed Defendant's inspections on May 8, 2014, May 28, 2014, and June 13, 2014 because of the bedbug issue and because of "excessive items [] strewn about her unit causing a trip hazard."[22] Defendant abated its assistance payments to Jackson Hinds Gardens because the bedbug infestation was considered a health and safety hazard that Jackson Hinds Gardens was responsible for handling.[23]

Jackson Hinds Gardens commenced evicting Plaintiff on July 21, 2014, for "serious and repeated violations of her lease."[24] Jackson Hinds Gardens sought to evict Plaintiff because Plaintiff did not allow bedbug treatment of her unit and because of non-payment of rent.[25] As stated above, Defendant abated its assistance payments to Jackson Hinds Gardens during this time period because Jackson Hinds Gardens was not meeting its health and safety obligations as

---

[21]     See id. ¶ 25; Doc. 49-9, Ex. 9 to Def.'s Mot. for Summ. J., Result Letter from Informal Hr'g p. 2.

[22]     See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶ 19.

[23]     See id. ¶ 27; Doc. 1-1, Ex. A to Pl.'s Compl., Email from Nisha Trottie to Tom McCasland Dated Oct. 21, 2014; Doc. 1-3, Ex. C to Pl.'s Compl., Letter from Defendant to Jackson Hinds Gardens Dated May 15, 2014.  Because Plaintiff has not submitted a proper response to Defendant's motion for summary judgment, the court has looked to Plaintiff's evidence submitted with Plaintiff's Complaint and submitted along with her stricken response to Defendant's motion for summary judgment to provide a more complete factual account.

[24]     See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J, Aff. of Tom McCasland ¶¶ 25, 26.

[25]     See id. ¶¶ 27, 39.

5

an owner.[26]  Defendant did not take part in the decision to evict Plaintiff.[27]  Plaintiff was not evicted from her unit and still, according to Plaintiff's contact information, resides there.[28]

Defendant asked Plaintiff several times from August through December 2014 to allow her unit to be inspected and treated for bedbugs, explaining to her that her benefits would be terminated if an inspection could not take place.[29]  Plaintiff still did not allow inspections of her unit or treatment for bedbugs.[30]  Therefore, Defendant sent her termination of benefits letters on November 17, 2014, and November 21, 2014.[31]  These letters provided Plaintiff

---

[26]  See id. ¶ 27; Doc. 1-1, Ex. A to Pl.'s Compl., Email from Nisha Trottie to Tom McCasland Dated Oct. 21, 2014.

[27]  See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶¶ 27, 39.

[28]  See id. ¶¶ 39, 42; Doc. 1-1, Ex. A to Pl.'s Compl., Email from Nisha Trottie to Tom McCasland Dated Oct. 21, 2014.

[29]  See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶¶ 27, 39 ¶¶ 21, 29; Doc. 1-1, Ex. A to Pl.'s Compl., Email from Adeline Benoit to Diana Zuniga Dated Nov. 20, 2014 ("[Plaintiff] was to notify HCHA by Friday 10/31/2014 if she was going to allow us to conduct the inspection, but she did not follow through."); Doc. 73-2, Ex. Q to Pl.'s Resp. to Def.'s Mot. for Summ J., Email from Tom McCasland to Pl. Dated Oct. 7, 2014; Doc. 73-2, Ex. S to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email from Tom McCasland to Adeline Benoit Dated Oct. 28, 2014 ("I spoke with [Plaintiff] yesterday . . . She was not able to answer her door, but she spoke with me at length through the closed door. I emphasized my desire to help her retain her housing, but let her know that we needed to have the inspections resolved by Friday. . . . She said that she understood, and she promised that she would have the inspection resolved by Friday.").

[30]  See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶ 31; Doc. 73-2, Ex. R to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email from Nisha Trottie to Tom McCasland Dated Oct. 21, 2014 ("We have dropped [Plaintiff's] eviction, but she continues to violate her lease and refuses monthly pest control services.").

[31]  See Doc. 49-8, Ex. 8 to Def.'s Mot. for Summ. J., Termination Notice Letters.

notice that her benefits would be terminated on December 31, 2014, and that she had a right to an informal hearing.[32]   Defendant's stated reason for terminating Plaintiff's benefits was that she violated her family obligations, lease, and Jackson Hinds Gardens' rules because of the three failed inspections.[33]   Plaintiff elected her right to the informal hearing, which was scheduled for December 18, 2014.[34]   Plaintiff filed this lawsuit on December 15, 2014, before the hearing was held.[35]

The hearing took place and Plaintiff's benefits were not terminated.[36]   The hearing officer found that Plaintiff did not have adequate notice from Defendant regarding her obligations vis-a-vis those of Jackson Hinds Gardens.[37]   It also found that Plaintiff did allow for one bedbug treatment on May 27, 2014.[38]   The hearing officer ordered Defendant not to terminate Plaintiff's benefits.[39]   Plaintiff agreed, at the hearing, to allow for an inspection and

---

[32]    See id. pp. 1, 5.

[33]    See id. pp. 1, 3, 5.

[34]    See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶ 33.

[35]    See id. ¶ 34.

[36]    See Doc. 49-9, Ex. 9 to Def.'s Mot. for Summ. J., Result Letter from Informal Hr'g p. 2.

[37]    See id.

[38]    See id.

[39]    See id.

bedbug treatment of her unit.[40]

Plaintiff's unit passed inspection on February 2, 2015.[41] Her contract with Defendant was renewed after the inspection.[42] Plaintiff signed a new lease with Jackson Hinds Gardens on August 31, 2015.[43] Defendant used its own, nonfederal money to pay Plaintiff's back rent during the time that Plaintiff and Jackson Hinds Gardens were in violation of their Section 8 obligations.[44]

**B.   Procedural Background**

On December 15, 2014, Plaintiff filed her complaint and an application for injunctive relief, bringing claims under the Supremacy Clause of the Constitution and Section 1983.[45] The complaint set forth three different causes of action and sought damages as well as declaratory and injunctive relief.[46] The first cause of action alleged that she had an interest in the voucher program that was terminated with inadequate notice.[47] The second

---

[40]   See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶ 36.

[41]   See id. ¶¶ 37, 43.

[42]   See id. ¶ 36; Doc. 49-10, Ex. 10 to Def.'s Mot. for Summ. J., Pl. & Def. Contract Renewal.

[43]   See Doc. 49-11, Ex. 11 to Def.'s Mot. for Summ. J., Pl. New Lease with Jackson Hinds Gardens.

[44]   See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶¶ 39, 40.

[45]   See Doc. 1, Pl.'s Orig. Compl. pp. 1, 9.

[46]   See id. pp. 9-11.

[47]   See id. p. 9.

cause of action alleged that she was denied due process by
Defendant in the termination process.[48]  The third cause of action
alleged that the termination grounds were arbitrary and capricious
because Plaintiff had not violated her family obligations.[49]

Defendant replied by filing a motion to dismiss on January 13,
2015.[50]  The motion to dismiss was brought under Federal Rule of
Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), arguing that the
complaint failed to allege subject matter jurisdiction and failed
to state a claim upon which relief could be granted.[51]  Plaintiff
responded February 2, 2015, arguing that the court could exercise
subject matter jurisdiction over the complaint and that Plaintiff
had made specific factual allegations in her complaint.[52]  Plaintiff
also made a motion for leave to file a first amended complaint on
the same date.[53]

On February 3, 2015, the court granted Plaintiff's motion for
leave to file a first amended complaint, denied Defendant's motion
to dismiss as moot, and denied Plaintiff's application for an
injunction as moot.[54]  Plaintiff filed her first amended complaint

---

[48]  See id. p. 10.

[49]  See id. pp. 10-11.

[50]  See Doc. 6, Def.'s Mot. to Dismiss.

[51]  See id. p. 1.

[52]  See Doc. 7, Pl.'s Resp. in Opp'n to Mot. to Dismiss p.1.

[53]  See Doc. 8, Pl.'s Mot. for Leave to File First Am. Compl.

[54]  See Doc. 9, Ord. Dated Feb. 2, 2015.

on that same date.[55]   Plaintiff's first amended complaint alleged the basis for subject matter jurisdiction and added several new causes of action including claims under Section 1985 and state law claims including trespass, negligence, negligence per se, conspiracy, and invasion of privacy.[56]

A few months later, Plaintiff filed a motion for leave to file a second amended complaint.[57]   In this second amended complaint, Plaintiff sought to add to the suit four employees of Defendant in their individual capacities.[58]   Defendant opposed this motion, contending that the proposed amendment was "frivolous, futile, moot, and filed in bad faith."[59]

Plaintiff's attorney sought to withdraw from the case on June 16, 2015, on the "basis of irreconcilable differences," and both Plaintiff and Defendant opposed this motion and filed responses.[60] The court allowed Plaintiff's attorney to withdraw from the case on June 29, 2015, and Plaintiff continued pro se.[61]

---

[55]   See Doc. 10, Pl.'s 1st Am. Compl.

[56]   See id. pp. 2, 12-17.

[57]   See Doc. 22, Pl.'s Mot. for Leave to File 2d Am. Compl.

[58]   See Doc. 22-1, Attach. 1 to Pl.'s Mot., Pl.'s Proposed 2d Am. Compl. pp. 1, 16.

[59]   Doc. 25, Def.'s Resp. in Opp'n to Pl.'s Mot. for Leave to File 2d Am. Compl. p.1.

[60]   Doc. 23, Opposed Mot. to Withdraw as Counsel of R. p. 1; Doc. 25, Def.'s Resp. in Opp'n. to Opposed Mot. for Counsel to Withdraw as Att'y.

[61]   See Doc. 30, Ord. Dated Sept. 22, 2015 p. 1.

Plaintiff's motion for leave to file a second amended complaint was denied on September 22, 2015, on the basis that the amendment would be futile because Plaintiff failed to state a claim for relief against any of the additional four defendants added in the proposed second amended complaint.[62]

The Rule 16 scheduling order was entered on April 4, 2015, with the discovery deadline set for October 31, 2015.[63] Defendant filed an expert witness list by the deadline on September 30, 2015, and filed an amended exhibit the next day.[64] Plaintiff filed a motion to strike the designation of these experts on November 20, 2015, along with a motion to compel discovery.[65] Defendant responded to this motion to strike on December 7, 2015.[66] Plaintiff replied on December 18, 2015.[67] Defendant filed a surreply on December 31, 2015.[68]

Defendant filed its first motion to compel the deposition of Plaintiff on October 21, 2015, after her deposition was scheduled

---

[62]     See id. pp. 1, 4-5.

[63]     See Doc. 19, Rule 16 Scheduling Ord.

[64]     See Doc. 31, Def.'s Designation of Expert Witnesses; Doc. 32, Def.'s Am. Exs.

[65]     See Doc. 50, Pl.'s Mot. to Strike Def.'s Expert Witnesses & to Compel Disc.

[66]     See Doc. 53, Def.'s Resp. in Opp'n. to Mot. to Strike Designation of Expert Witness List.

[67]     See Doc. 57, Pl.'s Reply to Resp. in Opp'n to Mot.

[68]     See Doc. 59, Def.'s Surreply to Mot. to Strike Designation of Expert Witness List.

to take place on October 20, 2015, and Plaintiff did not attend.[69]
A hearing took place on October 26, 2015, when the court heard
arguments on Defendant's first motion to compel the deposition of
Plaintiff and granted the motion.[70]   At that hearing, the court
rescheduled Plaintiff's deposition for November 3, 2015, a date she
requested.[71]   Defendant then filed another motion to compel
Plaintiff's discovery responses on October 30, 2015.[72]   On the
scheduled date of the deposition, although in attendance, Plaintiff
failed to submit to her deposition, objecting to the presence of
Defendant's representative at the deposition.[73]   Also at that
hearing, Plaintiff was given an extra week to respond to
Defendant's motion to compel her discovery responses.[74]

Also on November 3, 2015, Plaintiff filed a motion requesting
access to Pacer and "seeking referral of the matter to the U.S.
District Judge," which the court interpreted as a motion to recuse
the undersigned.[75]   Defendant filed a response in opposition to
Plaintiff's motion, arguing that Plaintiff had not followed the
proper procedures in approaching a motion for recusal and that the

---

[69]   See Doc. 33, Def.'s Mot. to Compel the Dep. of Pl. pp. 1, 2.

[70]   See Doc. 35, Min. Entry Dated Oct. 26, 2015.

[71]   See id.

[72]   See Doc. 36, Mot. to Compel Disc.

[73]   See Doc. 35, Min. Entry Dated Oct. 26, 2015.

[74]   See Doc. 39, Min. Entry Dated Nov. 3, 2015.

[75]   Doc. 40, Pl.'s Untitled Filing Dated Nov. 3, 2015.

facts alleged did not show bias or prejudice by the court in the lawsuit.[76]   Plaintiff's motion to gain access to Pacer and CM-ECF was denied on August 16, 2016.[77]   Plaintiff's motion for recusal was denied on August 31, 2016.[78]

On November 10, 2015, Plaintiff filed a motion to proceed pro se, in forma pauperis, for sanctions and enlargement of time and objections to the Magistrate Judge's ruling on the second amended complaint and for preliminary relief reinstating subsidized rent under the Section 8 HCV Program, for leave to serve and file a third amended complaint, and for a protective order and to compel.[79] This motion was 351 pages long, not including the evidence.[80] Defendant filed a response to Plaintiff's motion on December 1, 2015.[81]   Along with that motion, Plaintiff also filed a third amended complaint.[82]   The third amended complaint was vastly similar to the second amended complaint that the court denied.[83]   The

---

[76]   See Doc. 51, Def.'s Resp. to Pl.'s Untitled Filing Dated Nov. 3, 2015, p. 1.

[77]   See Doc. 80, Ord. Dated Aug. 16, 2016.

[78]   See Doc. 82, Ord. Dated Aug. 31, 2016.

[79]   See Doc. 43, Pl.'s Proposed 3d Am. Compl.; Doc. 48, Pl.'s Mot. Requesting Misc. Relief.

[80]   See Doc. 48, Pl.'s Mot. Requesting Misc. Relief.

[81]   See Doc. 52, Def.'s Resp. to Pl.'s Mot. Requesting Misc. Relief.

[82]   See Doc. 43, Pl.'s Proposed 3d Am. Compl.

[83]   Compare Doc. 22-1, Attach. 1 to Pl.'s Mot., Pl.'s Proposed 2d Am. Compl.; with Doc. 43, Pl.'s Proposed 3d Am. Compl.; Doc. 60, Ord. Dated Jan. 4, 2016 p. 3.

13

difference between these two versions of the complaint was that Plaintiff sought to incorporate the 351-page motion she also filed that same day into the third amended complaint.[84]

In ruling on these motions, the court granted them in part and denied them in part.[85]   The court granted Plaintiff's motion to proceed in forma pauperis.[86]   The court overruled Plaintiff's objections to the court's denial of Plaintiff's motion for leave to amend, denied Plaintiff's motion for extension of time, denied Plaintiff's motion for leave to file and serve a third amended complaint, and denied Plaintiff's motion for preliminary relief.[87]

On January 25, 2016, Plaintiff filed a motion for sanctions, a protective order, and an enlargement of time to respond to Defendant's motion for summary judgment and "to quash the decision and order of the Magistrate Judge purporting to deny a motion for ADR."[88]   Defendant filed a response in opposition to the motion for protective order on February 15, 2016.[89]   The court denied the

---

[84]   See Doc. 43, Pl.'s Proposed 3^d Am. Compl. p. 16 ("Plaintiff further incorporates by reference all of the facts stated in her motion served on defendants November 10, 2015 as if they were set forth herein.").

[85]   See Doc. 60, Ord. Dated Jan. 4, 2016 pp. 1, 4.

[86]   See id.

[87]   See id. pp. 2-4.

[88]   Doc. 65, Pl.'s Mot. for a Protective Ord., Sanctions & Enlargement of Time to Reply in Opp'n to Def.'s Mot. for Summ. J. & to Quash the Decision & Ord. of the Mag. J. Purporting to Den. a Mot. for ADR.

[89]   See Doc. 69, Def.'s Resp. in Opp'n to Mot. for Protective Ord.

motion for a protective order on February 16, 2016.[90]  On March 7, 2016, Plaintiff submitted an amended motion, which the court granted in part and denied in part at the status conference on March 23, 2016.[91] Her motion for an enlargement of time was granted when the court gave her an additional two weeks to submit a new response to Defendant's motion for summary judgment.[92]  The court deferred ruling on the motion for sanctions until August 31, 2016, where it denied the motion for sanctions.[93]

Defendant filed this motion for summary judgment on November 20, 2015.[94]  Plaintiff filed a motion for an extension of time to fully respond to Defendant's motion for summary judgment on December 24, 2015, along with a motion complaining that the court extended the due date of the dispositive motions sua sponte.[95]  Plaintiff's motion for the extension of time was opposed by Defendant and granted by the court on January 7, 2016, giving

---

[90]    See Doc. 70, Ord. Dated Feb. 16, 2016.

[91]    See Doc. 72, Pl.'s Am. Mot. for a Protective Ord., Sanctions & Enlargement of Time to Reply in Opp'n to Def.'s Mot. for Summ. J. & to Quash the Decision & Ord. of the Mag. J. Purporting to Den. a Mot. for ADR; Doc. 76, Min. Entry Dated March 23, 2016.

[92]    See Doc. 76, Min. Entry Dated Mar. 23, 2016.

[93]    See id.; Doc. 83, Ord. Dated Aug. 31, 2016.

[94]    See Doc. 49, Def.'s Mot. for Summ. J.

[95]    See Doc. 57, Pl.'s Mot. for Extension of Time to Fully Respond to Def.'s Mot. for Summ. J.

Plaintiff an extension until January 25, 2016.[96]  Plaintiff's other motion was denied because there was no evidence in the record demonstrating that an extension of the deadline for dispositive motions was either sought or granted.[97]

Plaintiff missed that deadline but filed a response in opposition to the motion for summary judgment on March 7, 2016.[98] On March 23, 2016, the court held a status conference.[99]  At that status conference, Plaintiff's response to the motion for summary judgment was stricken by the court due to its length of 241 pages, not including the evidence.[100]  Also, the court instructed her that any affidavit accompanying the motion for summary judgment must be more specific and include the basis for her personal knowledge of the facts.[101]  The court then gave Plaintiff two weeks to file a more concise response within the court's page limitations.[102]  After this status conference, Defendant filed an answer on March 29, 2016.[103]

---

[96]     See Doc. 61, Def.'s Resp. in Opp'n to Mot. for Extension of Time to Fully Respond to Def.'s Mot. for Summ. J.; Doc. 63, Ord. Dated Jan. 7, 2016.

[97]     See Doc. 63, Ord. Dated Jan. 7, 2016 p. 1.

[98]     See Doc. 73, Resp. in Opp'n. to Mot. for Summ. J.

[99]     See Doc. 76, Min. Entry Dated Mar. 23, 2016.

[100]     See id.

[101]     See id.

[102]     See id.

[103]     See Doc. 77, Def.'s Ans. & Affirmative Defenses.

Plaintiff subsequently appealed to the U.S. Court of Appeals for the Fifth Circuit on January 25, 2016.[104]  Plaintiff appealed the court's denial of her motion for leave to file and serve a third amended complaint and the court's overruling of her objections to the Magistrate Judge's denial of her motion for leave to amend.[105]  The appeal was assigned to the Fifth Circuit on March 30, 2016.  The Fifth Circuit held that it did not have jurisdiction over such an appeal because the "district court's order denying leave to amend the complaint is not a final or otherwise appealable order."[106]  Therefore, the Fifth Circuit dismissed the appeal on June 24, 2016.[107]

As of the date of this Memorandum and Recommendation, Plaintiff has not filed a more concise response to Defendant's motion for summary judgment.  Even allowing tolling from March 30, 2016, to June 24, 2016, pending the Fifth Circuit appeal, it has now been more than two months since the appeal was dismissed and Plaintiff has not filed any responsive document.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that

---

[104]   See Doc. 64, Notice of Appeal to U.S. Court of Appeals for the 5th Cir. re: 60 Ord. on Mot. for Leave to Proceed in Forma Pauperis, Ord. on Mot. for Sanctions, Ord. on Mot. for Extension of Time, Ord. on Mot. for Miscellaneous Relief, Ord. on Mot. for Leave to File, Ord. on Mot. for Protective Ord.

[105]   See id.

[106]   Doc. 79, Ord. of U.S.C.A. J. p. 2.

[107]   See id.

no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of the nonmoving party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  FED. R. CIV. PRO. 56(c); Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute.  Stauffer v. Gearhart, 741 F.3d 574, 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th  Cir. 2007)).

The Local Rules state that failure to respond on a motion will be taken as a representation of no opposition.  L.R. 7.4.

18

Generally, the non-moving party has twenty-one days to file a response before the lack of response is considered a lack of opposition. <u>See</u> L.R. 7.3. However, because it would be improper to dismiss an action merely because of a lack of response, this court must carefully consider the merits of an unanswered motion. <u>Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anomia</u>, 776 F.2d 1277, 1279 (5th Cir. 1985)(<u>citing John v. Louisiana Bd. of Trs. for State Colls. & Univs.</u>, 757 F.2d 698, 707-08 (5th Cir. 1985)).

Notwithstanding the local rules, a party moving for summary judgment still has the burden of proving that no issue of material fact exists. <u>Celotex</u>, 477 U.S. at 323. If the movant fails to meet his burden the motion must be denied, regardless of the response, or lack thereof, by the nonmovant. <u>Tubacex, Inc. v. M/V Risan</u>, 45 F.3d 951, 954 (5th Cir. 1995); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). However, the court will only resolve factual controversies in favor of the nonmoving party when a controversy actually exists; in other words, no controversy exists when factual allegations are not challenged by the nonmoving party. <u>Little</u>, 37 F.3d at 1075 (citing <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888 (1990)). Therefore, assumptions or inferences that the nonmoving party could or would prove the necessary facts will not be made.

### III. Section 1983 and 1985 Standards

Sections 1983 and 1985 are not sources of substantive rights themselves, but provide an avenue for bringing claims for rights under other federal laws.  <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n.3 (1979); <u>Great Am. Fed. Sav. & Loan Ass'n. v. Novotny</u>, 442 U.S. 366, 372 (1979).

A plaintiff can establish a prima facie case under Section 1983[108] for the deprivation of civil rights by establishing: (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by an individual acting under the color of state law.  <u>Doe v. Rains Cnty. Indep. Sch. Dist.</u>, 66 F.3d 1402, 1406 (5th Cir. 1995).

Pursuant to Section 1985(3), it is illegal for "two or more persons in any State or Territory [to] conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws[] or of equal privileges and immunities under the laws."  The elements of a prima facie case are taken directly from the statute:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the

---

[108]   The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

20

laws; and (3) an overt act in furtherance of the
conspiracy; (4) which causes injury to a person or
property[] or a deprivation of any right or privilege of
a citizen of the United States.

Hilliard v. Ferguson, 30 F.3d 649, 652-53 (5th Cir. 1994). The
language of Section 1985(3) requires that the conspirators' actions
be driven by discrimination based on race or some other protected
classification. Bryant v. Military Dep't of Miss., 597 F.3d 678,
687 (5th Cir. 2010)(citing Griffin v. Breckenridge, 403 U.S. 88, 102
(1971)).

## V.  Analysis

In Plaintiff's first amended complaint, she alleged claims
under both federal and state law.  In this Memorandum and
Recommendation, the court will first address Defendant's ripeness
and mootness challenges and then address Plaintiff's federal claims
followed by her state claims.

## A.  Ripeness and Mootness

Defendant argues in its motion for summary judgment that the
court does not have jurisdiction because the claim was not ripe
when the lawsuit was filed, and the case is now moot because
Plaintiff did not lose her benefits and was not evicted.[109]

"The basic rationale behind our ripeness doctrine is to
prevent the courts, through premature adjudication, from entangling
themselves in abstract disagreements, when those disagreements are

---

[109]   See Doc. 49, Def.'s Mot. for Summ. J., p. 19.

premised on contingent future events that may not occur as anticipated, or indeed may not occur at all." Jackson Women's Health Org. v. Currier, 760 F.3d 448, 465 n.14 (5th Cir. 2014), cert. denied, 136 S.Ct. 2536 (2016)(quoting Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 72 (1993)).

Here, Plaintiff filed this action a few days before the informal hearing was scheduled. She premised her due process claim not on the failure to grant that hearing or the outcome of that hearing, but on alleged violations prior to the informal hearing. The occurrence of and the outcome of the hearing would not alter her allegations of due process violations earlier in the proceedings. Thus, even at the time of filing, the court's consideration of her claims was not dependent on contingent future events but dependent on events that had already occurred. When she amended her complaint after the informal hearing transpired, Plaintiff added no facts in support of her due process claims that were based on the occurrence or outcome of the hearing. The court finds that Plaintiff's due process claims were ripe for consideration at the time the original complaint was filed and continue to be ripe. Whether they are legally meritorious is an issue addressed in the subsequent section.

The mootness doctrine applies to eliminate a claim only "when a case or controversy no longer exists between the parties." Brindson v. McAllen Indep. Sch. Dist., No. 15-40160, 2016 WL

4204797, at *3 (5th Cir. Aug. 9, 2016)(slip copy)(citing <u>Bd. of Sch.
Comm'rs v. Jacobs</u>, 420 U.S. 128, 129 (1975)).  The doctrine does
not bar a claim for damages.  <u>Id.</u>

Here, Plaintiff seeks damages for the alleged violations of
state and federal law.  The argument that everything worked out in
the end does not make the controversy moot.

**B.  <u>Federal Claims</u>**

Plaintiff made federal claims under the Supremacy Clause, the
Fair Housing Act, and the Fourteenth Amendment to the Constitution.

**1.  Supremacy Clause**

Plaintiff's first amended complaint stated that "[t]his is an
action brought under the Supremacy Clause, as set forth in Art. VI,
Cl. 2 of the United States Constitution."[110]  Defendant argued that
this claim should be denied because the Supremacy Clause is not an
independent source of a federal right; it merely makes federal law
prevail over state law when the two come into conflict.[111]
Defendant stated that Plaintiff has not shown any conflict between
state and federal law.[112]

The Supremacy Clause is found in Article VI, Clause 2 of the

---

[110]    <u>See</u> Doc. 10, Pl.'s 1st Am. Compl. p. 12.

[111]    <u>See</u> Doc. 49, Def.'s Mot. for Summ. J. p. 20.

[112]    <u>See</u> <u>id.</u> p. 21.

Constitution and makes federal law the "supreme Law of the Land."[113] Therefore, when there is a conflict between state and federal law, federal law prevails.  Armstrong v. Exceptional Child Ctr. Inc., 135 S.Ct. 1378, 1383 (2015)(citing Gibbons v. Ogden, 22 U.S. 1, 210 (1824)).  The Supremacy Clause "is not the source of any federal rights, and certainly does not create a cause of action." Armstrong, 135 S.Ct. at 1383 (quoting Golden State Transit Corp. v. L.A., 493 U.S. 103, 107 (1989)).

The court agrees with Defendant here because, as the Supreme Court has clearly stated, the Supremacy Clause does not create a cause of action.  Armstrong, 135 S.Ct. at 1383.  The court also agrees with Defendant that Plaintiff does not raise any conflict between federal and state law, to which the Supremacy Clause would apply.  See id.  Therefore, the court recommends granting summary judgment on Plaintiff's Supremacy Clause claim.

## 2.  Due Process Claims[114]

---

[113]    The full text of the Supremacy Clause is as follows:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

[114]    In addition to the due process claims, Plaintiff also mentions an equal protection claim.  Doc. 10, Pl.'s 1st Am. Compl. p. 16 ("[T]he Constitution . . . guarantees equal protection under the law. . . . HCHA's actions in unilaterally failing to pay Plaintiff's rental subsidy . . . constitute . . . a denial of equal protection under the Fourteenth Amendment.")  However, in order to state a claim under the Equal Protection Clause, a plaintiff must first allege "that two or more classifications of similarly situated persons were treated differently" by a state actor.  Gallegos-Hernandez v. United States, 688 F.3d 190, 195 (5th Cir. 2012).  Plaintiff did not identify the classification at issue

The Due Process Clause encompasses both procedural and substantive rights.  Cty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998).   The constitutional guarantee of procedural due process includes, at a minimum, notice and an opportunity to be heard in a meaningful time and manner.  Gibson v. Tex. Dept. of Ins.-Div. of Worker's Comp., 700 F.3d 227, 239 (5th Cir. 2012)(quoting Fuentes v. Shevin, 407 U.S. 67, 80 (1972)).   The constitutional guarantee of due process also includes a substantive component that protects individuals from arbitrary or conscience-shocking executive action.  See Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 867 (5th Cir. 2012)(quoting Cty. of Sacramento, 523 U.S. at 847).

Plaintiff first alleged that Defendant denied her due process of law because Defendant must provide the opportunity for an informal hearing before benefits are terminated, citing 24 C.F.R. § 982.555 ("Section 982.55").[115]  Defendant argued that Plaintiff was given due process because she was given notice of the termination of her benefits, had an opportunity for an informal hearing where she was represented by counsel, and, ultimately, her

_____

or allege that she was treated differently from any non-protected group.  See Doc. 10, Pl.'s 1st Am. Compl. p. 16.  Plaintiff merely alleges that the process of termination was unfair, and she does not show any way in which she was treated differently than another class of persons.  Therefore, Plaintiff's equal protection claim should be dismissed.

[115]   See Doc. 10, Pl.'s 1st Am. Compl. p. 14.

assistance was not terminated.[116]

Section 982.555(a)(1)(iv) requires the right to elect an informal hearing for a participant family when there is a "determination to terminate assistance for a participant family because of the family's action or failure to act." This section of the regulations mandates a family be notified of the termination and allows the family to appeal the decision by requesting an informal hearing. 24 C.F.R. § 982.555(c). Defendant's Administrative Plan also requires such notice.[117] The regulations allow for representation by a lawyer, discovery, an opportunity to present evidence, and a hearing officer. 24 C.F.R. § 982.555(e). The hearing officer who conducts the hearing issues a written decision, with facts determined by a preponderance of the evidence standard. 24 C.F.R. § 982.555(e)(6).

The court agrees with Defendant that Plaintiff was given due process. Plaintiff was given proper notice of the termination of her benefits due to her violation of family obligations by letters sent to her by Defendant on November 17, 2014, and November 21, 2014.[118] The letters provided Plaintiff notice of her violation of family obligations and of her right to an informal hearing.[119] She

---

[116]  See Doc. 49, Def.'s Mot. for Summ. J. pp. 22-23.

[117]  See Doc. 49-5., Ex. 5 to Def.'s Mot. for Summ. J. p. 43.

[118]  See Doc. 49-8, Ex. 8 to Def.'s Mot. for Summ. J., Termination Notice Letters pp. 1-6.

[119]  See id.

chose to elect the right to an informal hearing, which was scheduled for December 18, 2014.[120]   At the hearing, Plaintiff was represented by counsel, who requested discovery from Defendant on December 3 and 4, 2014.[121]   The hearing officer's decision not to terminate Plaintiff's benefits was handed down on December 29, 2014.[122]

Plaintiff also alleged that Defendant violated the due process clause by failing to pay the rent subsidy without notice and in violation of Defendant's Administrative Plan.[123]   Defendant argued that it had proper grounds to not make the assistance payments to Jackson Hinds Gardens as it was violating its owner obligations.[124]

Under the HUD regulations, an "owner must maintain a unit in accordance with [Housing Quality Standards ("HQS")]."  24 C.F.R. § 982.404(a)(1).   HQS are HUD's "minimum quality standards for housing assisted under the HCV program."  24 C.F.R. § 982.4(b). HQS for housing under the HCV Program are listed in 24 C.F.R. § 982.401.  The regulations require the owner, Jackson Hinds Gardens, to maintain the unit in accordance with these HQS.  24 C.F.R. § 982.404(a)(1).  A PHA such as Defendant "must not make any housing

---

[120]   See id. pp. 7-8.

[121]   See Doc. 10, Pl.'s 1st Am. Compl. pp. 14-15.

[122]   See Doc. 49-9, Ex. 9 to Def.'s Mot. for Summ. J., Result Letter from Informal Hr'g pp. 1-2.

[123]   See Doc. 10, Pl.'s 1st Am. Compl. pp. 15-16.

[124]   See Doc. 49, Def.'s Mot. for Summ. J. pp. 24-25.

assistance payments for a dwelling unit that fails to meet the HQS, unless the owner corrects the defect."    24 C.F.R. § 982.404(a)(3).

Defendant did not make assistance payments to Jackson Hinds Gardens for a period of time while Jackson Hinds Gardens was not in compliance with its owner obligations.[125]  Jackson Hinds Gardens was not in compliance with its owner obligations because units "must be free of vermin and rodent infestation," and Plaintiff's unit was infested, which is why it repeatedly failed inspections.[126] Defendant was required by federal law not to make these assistance payments to Jackson Hinds Gardens during this period of Jackson Hinds Gardens' noncompliance.  Defendant ultimately used nonfederal money to pay the back rent on the unit so that Plaintiff would not be evicted, which would have forced her termination from assistance by Defendant.[127]

Finally, Plaintiff brought a "termination grounds claim," alleging that Defendant did not have proper grounds for termination in violation of due process.[128]  Defendant argues that it did have

---

[125]    See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶ 27 ("Due to the three failed inspections on May 8, 2014, May 28, 2014, and June 13, 2014, the HCHA abated housing assistance payments to JHG with regard to Ms. William's unit due to its violation of HQS.  The bed-bug infestation was considered a health and safety hazard which was an Owner Obligation that failed to meet HQS.").

[126]    See id.

[127]    See id. ¶¶ 39-40; 24 C.F.R. 982.552(b)(2)("The PHA must terminate program assistance for a family evicted from housing assisted under the program for serious violation of the lease").

[128]    Doc. 10, Pl.'s 1st Am. Compl. pp. 14-15.

proper grounds for termination because Plaintiff violated its family obligations.[129]

The HUD regulations, Defendant's Administrative Plan, and Plaintiff's agreement with Defendant require certain obligations on the part of Plaintiff called "family obligations."[130] 24 C.F.R. § 982.551. Violations of family obligations include failing to allow inspections and lease violations. Id. A PHA may terminate a family's assistance if the family violates any of its family obligations as prescribed in 24 C.F.R. § 982.551. 24 C.F.R. § 982.552(c)(1)(i)("The PHA may at any time . . . terminate program assistance on any of the following grounds: (i) If the family violates any family obligations under the program.").

The court agrees with Defendant that the grounds on which Defendant rested Plaintiff's termination were not baseless. Defendant's Administrative Plan and the HUD regulations required Plaintiff to allow for inspections by Defendant.[131] Plaintiff repeatedly did not allow Defendant to inspect her unit from August to December of 2014, despite being warned that the failure to do so could result in termination of her benefits.[132] Therefore,

---

[129]   See Doc. 49, Def.'s Mot. for Summ. J., pp. 23-25.

[130]   Doc. 49-8, Ex. 8 to Def.'s Mot. for Summ. J., Termination Notice Letter pp. 1-4; Doc. 49-5, Ex. 5 to Def.'s Mot. for Summ. J., Def.'s Admin. Plan pp. 12.

[131]   See Doc. 49-5, Ex. 5 to Def.'s Mot. for Summ. J., Def.'s Admin. Plan pp. 12.

[132]   See Doc. 49-12, Ex. 12 to Def.'s Mot. for Summ. J., Aff. of Tom McCasland ¶¶ 21, 29.

Defendant was not trying to terminate her benefits on baseless grounds; Defendant had a right to terminate her benefits for failure to allow Defendant to inspect the unit, as required by Plaintiff's family obligations.

Therefore, all of Plaintiff's due process claims should be dismissed.

### 3. Fair Housing Act

Plaintiff alleged in her first amended complaint claims under Section 1983 for violations of the Fair Housing Act and Section 1427 and a claim under Section 1985.[133]

Plaintiff's Fair Housing Act claims are unclear, but it seems that she alleged two separate causes of action. Plaintiff first states that she has a claim as a private individual under Section 1983 to enforce her "federal right to a properly calculated housing subsidy action under 42 U.S.C. § 1437," the United States Housing Act of 1937.[134] Plaintiff then alleged that she is a "handicapped and aggrieved person" under the Fair Housing Act.[135] In this second claim, Plaintiff appears to allege that Defendant had discriminatory intent towards her in violation of Section 3604 of the Fair Housing Act.[136] Defendant argued that Plaintiff was not

---

[133]   See Doc. 10, Pl.'s 1st Am. Compl. pp. 13-14, 16-17.

[134]   See id. p. 13.

[135]   See id.

[136]   See id. p. 14.

denied of a federal right to a properly calculated housing subsidy under Section 1437.[137]

In evaluating whether there is a cause of action under Section 1437, "two avenues exist . . . [t]he statute may create rights enforceable by individuals against state actors pursuant to 42 U.S.C. § 1983.  Alternatively, the statute may give rise to an implied private cause of action."  Banks v. Dall. Hous. Auth., 271 F.3d 605, 608 (2001).  In this case, Plaintiff does not refer specifically to what section of 42 U.S.C. § 1437 she attempts to make a claim, but the court infers Plaintiff meant § 1437f, the part of the United States Housing Act that refers to Section 8 Housing.

The Fifth Circuit and other Texas courts have found that Section 1437f does not create a federally enforceable right under 42 U.S.C. § 1983, nor does it create an implied private right of action.  See Banks, 271 F.3d at 609-11; Rodgers v. Garland Hous. Agency, No. 3:01-CV-0477-H, 2001 WL 1029516 at *3 (N.D. Tex. 2001)("numerous decisions support the conclusion that the United States Housing Act of 1937 does not permit an implied right of action under Section 8 programs"); Modica v. Reyna, No. 1:08-CV-871, 2009 WL 2827975, at *9 (E.D. Tex. Sept. 2, 2009).

Looking to precedent, because Plaintiff does not have a federally enforceable right under Section 1983 or an implied right

---

[137]    See Doc. 49, Def.'s Mot. for Summ. J. p. 21.

of action under Section 1437f, these claims by Plaintiff should be dismissed.

The Fair Housing Act, on the other hand, explicitly affords an aggrieved person a private right of action for discriminatory housing practices.  See 45 U.S.C. § 3613; Lincoln v. Case, 3409 F.3d 283, 289 (5th Cir. 2003).  However, Plaintiff's discrimination claim under the Fair Housing Act should also be dismissed. Plaintiff has failed to provide any factual basis for discriminatory treatment by Defendant.  In her first amended complaint, Plaintiff alleged that Jackson Hinds Gardens failed to reasonably accommodate by not allowing her to move to a different unit during pest control treatment on May 27, 2014.  This is not relevant to whether Defendant's conduct was discriminatory towards Plaintiff because it was conduct by Jackson Hinds Gardens, not Defendant.  Interpreting the evidence in favor of Plaintiff, the only allegation Plaintiff makes about Defendant is that Defendant's case manager, Katherine Escamilla, took no action to force Jackson Hinds Gardens to move Plaintiff to another unit.[138]  This is not evidence of a discriminatory housing practice by Defendant. Therefore, Plaintiff's Fair Housing Act Claim discrimination claim should be dismissed.

Under Section 1985, Plaintiff alleged that she was deprived of

---

[138]    See Doc. 10, Pl.'s 1st Am. Compl. p. 8; Doc. 73-1, Ex. E to Pl.'s Resp. to Def.'s Mot. for Summ. J., Emails Between Pl. and Jackson Hinds Gardens pp. 61-91.

a federally guaranteed right by Defendant's "refus[al] to maintain the rental payments pursuant to the terms and the continued operation of the Section 8 Program," and Defendant's actions "constitute an intentional unlawful and unconstitutional conspiracy to deprive plaintiff of her constitutional rights."[139]  Defendant argued that it did not conspire with Jackson Hinds Gardens to deprive Plaintiff of her rights and that it did not fail to pay her rental subsidy.  Plaintiff has not provided any evidence of a conspiracy between Defendant and Jackson Hinds Gardens to deprive her of her rights.  Defendant, on the other hand, produced evidence of its actions that kept Plaintiff from being evicted, such as paying her back rent for the period when Jackson Hinds Gardens was not meeting its owner obligations and when Plaintiff refused inspections and pest control treatment.  Plaintiff's benefits were never terminated, and she still lives in the unit at issue in this case.  Plaintiff's Section 1985 claim should be dismissed.

C.  **State Law Claims**

Under Texas law, a trial court does not have subject matter jurisdiction over a claim where a governmental unit has been sued unless there has been consent from the governmental unit.  Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004).  A Texas housing authority is a "governmental unit" covered by the Texas Tort Claims Act ("TTCA").  Tex. Local Gov't Code §

---

[139]    See Doc. 10, Pl.'s 1st Am. Compl. pp. 16-17.

33

392.006.  The TTCA only waives immunity for governmental units for certain types of negligent conduct.[140]  See Tex. Civ. Prac. & Rem. Code Ann. § 101.021.  Claims "arising out of assault, battery, false imprisonment, or any other intentional tort" are excepted from the general waiver.  Tex. Civ. Prac. & Rem. Code § 101.057.

In Plaintiff's amended complaint, Plaintiff alleges state law causes of action for negligence, negligence per se, conspiracy, trespass, and invasion of privacy based on Texas common law.[141] Plaintiff failed to allege that her state law claims were based on the Texas Tort Claims Act, but, instead, she stated that they were based on Texas common law.[142]

However, "[b]ecause the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit. . . are assumed

---

[140]   The Texas Civil Practice and Remedies Code only waives immunity for the following types of conduct, making the governmental unit liable:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>> (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.
> Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

[141]   See Doc. 10, Pl.'s 1st Am. Compl. p. 17.  Defendant argues in its motion for summary judgment that Plaintiff did not provide proper notice to Defendant as required to invoke the Texas Tort Claims Act.

[142]   See id.

34

to be 'under [the Tort Claims Act].'" <u>Mission Consol. Indep. Sch.</u> <u>Dist. v. Garcia</u>, 253 S.W.3d 653, 659 (Tex. 2008); <u>see also</u> <u>Bustos</u> <u>v. Martini Club</u>, 599 F.3d 458, 463 (2010).   Therefore, the court must consider her claims to be brought under the Texas Tort Claims Act because Plaintiff alleged her claims against a governmental unit.

Trespass and conspiracy are considered intentional torts under Texas law. <u>See</u> <u>Stinson v. Fontenot</u>, 435 S.W.3d 793, 793-94 (Tex. 2014)("asserting various intentional tort claims including slander, trespass . . ."); <u>see</u> <u>also</u> <u>Kilburn v. Fort Bend Cty. Drainage</u> <u>Dist.</u>, 411 S.W.3d 33, 38-39 (Tex. App.–Hous. [14[th] Dist.] 2013, no pet.)("[Trespass] is an intentional tort in the sense that 'it involves the intent to commit an act that violates a property right, or would be practically certain to have that effect, although the actor may not know the act he intends to commit is such a violation.'"); <u>Firestone Steel Products Co. v. Barajas</u>, 927 S.W.2d 608, 617 (Tex. 1996)("Civil conspiracy is an intentional tort").   Texas only recognizes invasion of privacy as an intentional tort.[143]  Because invasion of privacy, conspiracy, and trespass are all considered intentional torts under Texas law, Plaintiff's claims of trespass, conspiracy, and invasion of privacy

---

[143]   <u>See</u> <u>Wheeler v. Yettie Memorial Hosp.</u>, 866 S.W.2d 32, 54 (Tex. App–Hous. [1st Dist.] 1993)("As a result, the supreme court did not reach the issue of whether a cause of action exists for negligent invasion of privacy. Thus, the question remains open")(citing <u>Boyles v. Kerr</u>, 806 S.W.2d 255 (Tex. App–Texarkana 1991), rev'd, 855 S.W.2d 593 (Tex. 1993)).

are barred by the TTCA and should be dismissed.

To determine whether the intentional tort exception applies, the court looks at the factual allegations giving rise to the claims. Where the essence of a claim falling within the application of the TTCA arises from an intentional tort, simply characterizing the claims as negligence is insufficient to avoid application of the intentional torts exception. See, e.g., Campbell v. City of San Antonio, 43 F.3d 973, 978 n.8 (5th Cir. 1995)(applying Texas law)("The heart of [the plaintiff's] allegations of negligent use of tangible personal property does indeed seem merely a part of a larger claim for false arrest or false imprisonment."); Tarrant Cty. Hosp. Dist. v. Henry, 52 S.W.3d 434, 441 (Tex. App.-Fort Worth 2001, no pet.)("A plaintiff cannot, however, circumvent the intentional tort exception simply by pleading negligence.").

Turning to Plaintiff's negligence and negligence per se claims, Plaintiff cannot circumvent the intentional tort exception to waiver of liability by simply pleading negligence when the actions on which her claims are based are actually intentional torts. In this case, Plaintiff did not allege negligent conduct on the part of Defendant; rather Plaintiff alleged that Defendant entered her unit for an inspection without her authorization, clearly an intentional act. Therefore, because Plaintiff's negligence claims are really intentional tort claims, these claims

are also barred under the TTCA and should be dismissed.

## VI.   Conclusion

Based on the foregoing, the court **RECOMMENDS** Defendant's motion for summary judgment should be **GRANTED**. Because the court recommends that Defendant's motion for summary judgment be granted, it need not address Defendant's alternative argument that Plaintiff's lawsuit should be dismissed as a sanction for failure to participate fully in discovery. Defendant's argument for sanctions is thereby **DISMISSED** as moot.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 2nd day of September, 2016.

U.S. MAGISTRATE JUDGE

37